IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| NICHOLAS GUENTHER, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CAUSE NO. 3:13-CV-669 |
| DR. NADIR AL-SHAMI, *et al.*, | ) | |
| Defendants. | ) | |

**REPORT & RECOMMENDATION**

The defendant, Dr. John Foster, moved for summary judgment, arguing that the Plaintiff, Nicholas Guenther, failed to exhaust his administrative remedies prior to filing suit in accordance with 42 U.S.C. § 1997e(a). (DE 24.) In ruling on the motion for summary judgment, the District Court found there to be a genuine disputes of material fact precluding the entry of summary judgment. (DE 38.) Specifically, the District Court found factual disputes as to: "(1) whether Guenther attempted to give a completed grievance form to Officer David Jackson on or about July 31, 2013, which the officer refused to take; (2) whether Guenther submitted a grievance to the warden on or about July 31, 2013; and (3) whether Guenther submitted any additional grievances about the medical treatment he received from Dr. Foster, which were thrown away and/or mishandled by jail staff." (*Id.*) The presiding judge referred this matter for a report and recommendation to determine those factual issues. (DE 45.)

On April 14, 2015, the Court held an evidentiary hearing. Guenther appeared *pro se*, and Dr. John Foster was represented by attorney Philip Zimmerly. Ronald Gaydos ("Gaydos"), Assistant Jail Commander for the Porter County Jail, Michael Dickey ("Dickey"), a jail officer at the Porter County Jail, Karen Sandage ("Sandage"), a sergeant at the Porter County Jail, and John Widup

("Widup"), former warden of the Porter County Jail, testified on behalf of the defendant. Defendant also submitted the deposition testimony of David Jackson ("Jackson"), a former jail officer at the Porter County Jail. Guenther testified on his own behalf. The defendant also admitted six exhibits: the Porter County Grievance Policy (Ex. 1); the Porter County Inmate Guide (Ex. 2); Nicholas Guenther's Inmate Grievance Log from 2013 (Ex. 3); Nicholas Guenther's previously filed grievances (Ex. 4); the Porter County Jail shift log sheet from August 1, 2013 (Ex. 7); and a transcript of the deposition testimony of David Jackson (Ex. 8).

**I. PRELIMINARY ISSUE**

As a preliminary matter, the court must address the issue of Joseph Coleman ("Coleman") not being present to testify during the *Pavey* hearing. At the *Pavey* hearing, Guenther inquired whether Coleman was present to testify. The court informed him that Coleman was not there. The court took this issue under advisement to review the record and determine whether it should allow Coleman to testify in this matter at a future date or whether Guenther had forfeited his right to call Coleman as a witness.

A review of the record shows that during the court's February 4, 2015, telephonic status conference, Guenther identified Coleman, a former fellow inmate at the Porter County Jail, as a prospective witness. However, as Guenther had been moved to the Miami Correctional Facility from the Porter County Jail, he was unsure of Coleman's whereabouts. In February 2015, pursuant to the court's direction, Attorney Lisa Baron located Coleman at the Porter County Jail and informed the parties of Coleman's whereabouts. (DE 55, 56.) The parties were ordered to file their final witness lists by April 7, 2015, for the upcoming *Pavey* hearing. (DE 53.) Guenther did not file his

final witness list. Nor did Guenther otherwise mention Coleman again until the *Pavey* hearing began.

A federal court has the authority to compel the attendance of a state inmate to testify as a witness and the State must bear the cost of making that inmate available. *Barnes v. Black*, 544 F.3d 807, 09-10 (7th Cir. 2008) (citations omitted). Thus, the court had the power to compel Coleman's attendance. The problem is that Guenther did not make it known that he wanted Coleman to be present at the hearing. While Guenther had the right and the opportunity to request Coleman to attend the hearing, he simply did not assert that right prior to the hearing. He did not identify Coleman as a witness on his final witness list. Nor did he file any motion or letter requesting Coleman's attendance. Informally identifying Coleman as a prospective witness at the telephonic conference was not enough to put this court on notice that it needed to compel Coleman's attendance. Guenther waited until the hearing began to formally request Coleman's attendance. This was too late. As such, this court finds Guenther forfeited his right to call Coleman as a witness at the hearing. See *Cloe v. City of Indianapolis,* 712 F.3d 1171, 1182 n. 6 (7th Cir. 2013) (explaining that "forfeiture occurs when a defendant fails to timely assert his rights.") (citation omitted).

However, the finding that Guenther forfeited his right to have Coleman testify is of little consequence because Coleman's testimony would not have altered the outcome of this order. At the hearing, Guenther summarized what he expected Coleman to testify to if he were called as a witness. Coleman was expected to testify about Guenther's June 24th meeting with the warden, as

3

well as Guenther's unhappiness with his medical treatment at the Jail. In addition, Coleman may have[1] testified about proofreading one of Guenther's emergency grievances.

Notably absent from that proffer was any alleged first-hand knowledge Coleman had of Guenther submitting, or attempting to submit, a confidential grievance on July 31, 2013.[2] Because there is no indication that Coleman had any first-hand knowledge regarding the specific issues to be decided at the *Pavey* hearing, his testimony would have been inconsequential.

## II. FINDINGS OF FACT

In making the following findings of fact, the court considered the credibility of the witnesses.

At the hearing, Ron Gaydos, who was the Assistant Jail Commander at the Porter County Jail in July 2013, testified that the Porter County Jail ("Jail") had a written grievance procedure contained within its standard operating procedures. This grievance procedure was explained to inmates in the inmate guide, which was given to them during orientation. The grievance procedure allowed for inmates to file confidential grievances. To accomplish this, an inmate placed a grievance form in a sealed envelope, addressed to the warden, and marked confidential. The inmate then placed that piece of mail into the Jail mailbox, which is used to collect both U.S. postal mail and inmate grievances.

The usual practice was for the mail in the Jail mailbox to be collected each night by an officer working the midnight shift. After collecting the mail, the officer would go to his post and sort through the mail. The officer would separate the postal mail from the inmate grievances. Any

---

[1] Guenther was unsure if Coleman proofread any of his grievances.

[2] This is not surprising because at the hearing Guenther did not provide testimony that he submitted any confidential grievances on July 31, 2013.

4

confidential grievances would be delivered to the warden and placed in his mailbox. If the grievance pertained to a jail issue, Gaydos would log the grievance to keep track of what the grievance was and how it was handled. If the grievance related to a medical issue, then medical would keep track of or log any medical concerns. The court finds Gaydos' testimony to be credible and credits his testimony.

The deposition testimony of David Jackson, a former officer at the Porter County Jail, was submitted at the hearing. On rare occasions, inmates would try to hand Jackson grievances while he worked at the Jail. When this happened, he would determine if there was an immediate threat to the inmate's health or safety. If the issue was not time sensitive, he would instruct the inmate to place the grievance in the Jail mailbox. Jackson recalled Guenther was an inmate during the time he worked at the Jail. However, Jackson had no recollection of Guenther attempting to hand him a grievance form on July 31, 2013. If this would have happened, though, Jackson would have followed his normal practice. If the grievance would have been time sensitive, then Jackson would have tried to resolve it. But, if the grievance was not time sensitive, he would have instructed Guenther to place the grievance in the mailbox. As the deposition testimony was admitted without objection, and uncontested, the court credits Jackson's testimony.

Michael Dickey, a jail guard at the Porter County Jail, testified at the hearing. Any mail placed in the Jail mailbox on July 31, 2013, in the satellite where Guenther was housed would have been picked up by Officer Dickey, who worked the midnight shift that night. To assure that the mail was not lost or misplaced, Officer Dickey typically collected the mail and put it into a bag. From there, he laid the mail out on his desk and sorted it. Typically, there were about fifty grievances a day submitted in the satellite. Although he does not remember sorting mail in the early morning of

5

August 1, 2013, he would have sorted it in accordance with his normal practice. If he would have found a sealed envelope directed to Warden Widup, he would have turned it over to his supervisor, Sergeant Sandage. The court finds Dickey's testimony to be credible and credits his testimony.

Karen Sandage, a sergeant at the Porter County Jail, testified at the hearing. She estimated that there were approximately two confidential grievances directed to the warden that were placed in the mail each day. She does not recall receiving any sealed grievances directed to Warden Widup on August 1, 2013. However, if there was one, she would have placed it in the warden's mailbox for him to receive the next morning. The court finds Sandage's testimony to be credible and credits her testimony.

John Widup, who was the warden for the Porter County Jail during in July 2013, testified at the hearing. Each morning Warden Widup would check his mailbox to seek if there was a confidential envelope from an inmate. Warden Widup recalls Guenther made numerous complaints about not being satisfied with his medical treatment prior to Dr. John Foster's arrival. In June 2013, Warden Widup and a nurse met with Guenther asking him to be patient because the Jail was getting a new medical provider in the near future. This meeting took place prior to Dr. John Foster starting at the Jail. Because of his interaction with Guenther, Warden Widup believed he would have remembered if Guenther filed a confidential grievance form on July 31, 2013. However, Warden Widup did not recall receiving any confidential grievance from Guenther. The court finds Widup's testimony to be credible and credits his testimony.

Nicholas Guenther, the plaintiff, testified at the hearing. In his response to the motion for summary judgment, filed on June 18, 2014, Guenther wrote that he attempted to submit a confidential grievance to Officer Jackson on July 31, 2013, but that Jackson refused to take it. (DE

34 at 4-5.) He claimed to have placed that confidential grievance addressed to the warden in the Jail mailbox later that same day. (DE 34 at 5.) At the hearing, Guenther presented no testimony that he handed David Jackson a confidential grievance on July 31, 2013. Nor did he assert that he placed a confidential grievance in the mailbox to Warden Widup on that date. Those omissions, along with his demeanor on the stand, undermined Guenther's credibility. Because he did not testify about submitting any July 31, 2013, confidential grievance to either Jackson or Widup, the Court finds that he did not submit any such grievance, and that his representations of doing so in his summary judgment response was a fabrication.

Although he did not testify that he submitted a confidential grievance on July 31, 2013, Guenther did assert that he submitted two confidential grievances while housed at the Jail. He claims that he filed one on June 23, 2013, which was before Dr. Foster began working at the Jail and, thus, immaterial for purposes of this hearing. Guenther could not recall when he filed the alleged second confidential grievance. He also did not discuss the reasons why he filed that alleged second grievance. Guenther's brevity and lack of detail regarding the date and subject matter of his alleged second confidential grievance leads this court to believe that it, too, was a fabrication in an attempt to defeat summary judgment.

During and after the April 14, 2015, hearing, the court carefully considered the credibility and demeanor of the witnesses. There was no credible evidence presented that would indicate Guenther attempted to submit a confidential grievance to David Jackson on July 31, 2013. Nor was there any credible evidence that showed Guenther placed a confidential grievance in the Jail mailbox on that date. Instead, the credited testimony and the admitted evidence establish that: Guenther never attempted to hand a confidential grievance to David Jackson on or about July 31, 2013, which

the former officer refused to take; Guenther did not submit a grievance to the warden on or about July 31, 2013; and (3) Guenther did not submit any additional grievances about the medical treatment he received from Dr. Foster, which were thrown away and/or mishandled by jail staff.

### III. CONCLUSIONS OF LAW

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023.

Here, the defendant established that there were administrative remedies available to Guenther, but he failed to file a timely formal grievance with regard to Dr. John Foster. In fact, the court has found that Guenther did not submit or attempt to submit a grievance on July 31, 2013. As such, the Court concludes that Guenther did not exhaust his administrative remedies as to Dr. John Foster. Because Guenther did not satisfy the exhaustion requirement before bringing this lawsuit, his claims against Dr. John Foster must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that Nicholas Guenther did not submit or attempt to submit a grievance on July 31, 2013, and, therefore, **RECOMMENDS** that Dr. John Foster be **DISMISSED WITHOUT PREJUDICE** for Guenther's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**NOTICE IS HEREBY GIVEN** that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b). Failure to file objections within the specified time waives the right to appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239 (7th Cir. 1996).

SO ORDERED.

Dated this 1st day of May, 2015.

                                                               S/Christopher A. Nuechterlein
                                                               Christopher A. Nuechterlein
                                                               United States Magistrate Judge